374 P.2d 301

**Albert ROMERO, Plaintiff-Appellant,**

**v.**

**James Neil SHELTON and G. W. Dicus, d/b/a Dicus Beauty Supply Co., Defendants-Appellees.**

No. 6983.

Supreme Court of New Mexico.

Aug. 31, 1962.

Harris & Cathey, Roswell, for appellant.

Hervey, Dow & Hinkle, Roswell, for appellee James Neil Shelton.

Sanders & Bruin, Roswell, for appellee G. W. Dicus.

CARMODY, Justice.

This is an appeal from a judgment in a suit for personal injuries instituted by the plaintiff against two defendants, Shelton and G. W. Dicus, d/b/a Dicus Beauty Supply Company. The facts pertinent to a disposition of the points relied upon for reversal are as follows.

Defendant Shelton was a commission salesman for the defendant Dicus. His territory was the state of New Mexico outside Albuquerque; he drove and maintained his own automobile in pursuit of sales of beauty supplies; he chose his hours of work and places of work, subject to suggestions from defendant Dicus; he was given $5.00 for each night he spent "on the road" to defray his expenses, otherwise his remuneration depended entirely upon sales and collections; he telephoned, sent, or delivered orders to defendant Dicus at her place of business in Albuquerque, and the ordered merchandise was sent out from there by mail, although, on occasion, defendant Shelton would voluntarily deliver orders to customers on his selected line of travel. It should also be noted that, on rare occasions, Shelton took orders for other beauty supply houses. While defendant Dicus testified that she could have terminated Shelton's employment at any time, Shelton testified that he gave Mrs. Dicus three weeks' notice when he subsequently left her employ, and that this was the custom in the business. All of the evidence concerning the business relations between defendants Shelton and Dicus was elicited solely from those parties.

On April 19, 1960, defendant Shelton was proceeding from Vaughn to Roswell in his own automobile. He had dropped off some supplies earlier that morning at a beauty shop in Vaughn, and was traveling to Roswell to call on customers there. Less than a mile north of Roswell, Shelton's car struck the rear of plaintiff's car, which had stopped behind a school bus that was picking up children. Plaintiff brought action for injuries sustained in this collision, alleging in his second amended complaint that "the defendant Shelton, while acting

as agent and employee of defendant Gretchen Dicus, d/b/a Dicus Beauty Supply Company, did negligently, carelessly, recklessly, wantonly and wilfully, in violation of the laws of the State of New Mexico then in force and effect, operate and drive his automobile against an automobile driven by the plaintiff." A prayer for punitive damages and an affirmative defense of failure to join an indispensable party were dropped at a pre-trial conference. The case proceeded to trial, and after the plaintiff had rested, defendant Dicus' motion for a directed verdict was sustained by the court. The trial procceded as against defendant Shelton, resulting in a verdict against him in the amount of $12,000.00. Plaintiff appealed, alleging as error the action of the court in directing a verdict for the defendant Dicus and the court's failure to instruct the jury to take the plaintiff's life expectancy into consideration in determining damages. We will first consider the matter of the directed verdict.

A trial court is justified in directing a verdict for a defendant if, in the exercise of its sound discretion, it finds no evidence or permissible inference which would support a verdict for the plaintiff. Merrill v. Stringer, 1954, 58 N.M. 372, 271 P.2d 405. This court, on an appeal from a directed verdict, must view the evidence and all reasonable inferences to be drawn therefrom in a light most favorable to the plaintiff (Ferguson v. Hale, 1959, 66 N.M. 190, 344 P.2d 703; Sandoval v. Brown, 1959, 66 N.M. 235, 346 P.2d 551) and sustain the trial court's ruling only if there remains no issue of fact to be determined by the jury. Cole v. Younger, 1954, 58 N.M. 211, 269 P.2d 1096.

Counsel for defendant Dicus moved for a directed verdict as to her "for the reason that the evidence in this case wholly fails to show that the defendant, James Shelton, was the agent of, or employee of Gretchen Dicus *at the time and place of the accident in question*, and it shows by a preponderance of the evidence that the defendant, James Shelton, was at the time and place of the accident an independent contractor, and that, as such, there is no liability upon the part of Gretchen Dicus for his acts in connection with the operation of his vehicle at such time and place." (Emphasis added.) In sustaining this motion, the court placed heavy reliance upon a Wyoming decision and stated:

"In the Wyoming case [Stockwell v. Morris, 1933, 46 Wyo. 1, 22 P.2d 189], the Court pointed out the fact that a relationship, such as the evidence shows here, is in effect an agency as distinguished from a master and servant relationship, because the so-called agent or so-called servant is not performing personal services of the type necessary to create the relationship of a master and servant. That, in effect, and in

fact, there is an agency, but that relationship as to agency embraces merely the selling of the products which were involved here, the collection of the accounts, and does not in any manner involve the mode of conveyance adopted by the salesman. He had a right to adopt any mode of conveyance he wanted, and he chose his own automobile. And, to the operation of that automobile the relationship of agency does not extend because the principal had no right or authority to control the manner, means or times of the operation of the automobile, had nothing to do with the upkeep of it or for the expenses entailed in the operation of it."

We approve of the trial court's reasoning and authority on this question. We have had occasion in but one instance to discuss, to any degree at all, the effect of the doctrine of *respondeat superior* when applied to physical injuries in the field of agency as distinguished from the field of master and servant. In Stambaugh v. Hayes, 1940, 44 N.M. 443, 103 P.2d 640, plaintiff's intestate was struck and killed by an automobile driven by the defendant insurance salesman Hayes. Hayes collected premiums and sold policies for the defendant insurance company. A verdict against both defendants was rendered by the jury, and both defendants appealed from the judgment. The evidence showed that the defendant Hayes was subject to very close supervision and control while servicing and collecting on policies already in force, and this court, for purposes of the decision, assumed that Hayes was a servant of the defendant company. However, we found that there was no reasonable inference to be drawn to the effect that Hayes was, at the time of the accident, using his automobile in the course of his employment. Further, we stated, at page 452 of the opinion, in 44 N.M. at page 646 in 103 P.2d:

"Third, he was at liberty to sell life insurance (and that was the kind of insurance in which Zinn was interested) in or outside his debit [assigned territory]. Assuming that he was en route to Zinn's home for the purpose of soliciting Zinn's application for life insurance, *he was acting as an ordinary life insurance agent, and such agents are not within the classification of servants.*" (Emphasis added.)

Thus, this court has recognized the distinctions which exist between servants, agents, and non-servant agents. See, Restatement, Agency 2d, §§ 216, Comment (a); 220, Illustration 7; and 250. A servant is subject to his master's *right* to control. Bland v. Greenfield Gin Co., 1944, 48 N.M. 166, 146 P.2d 878; Campbell v. Smith, 1961, 68 N.M. 373, 362 P.2d 523. Likewise, an agent is subject to his principal's control *when acting for the principal.* Totah

Drilling Company v. Abraham, 1958, 64 N.M. 380, 328 P.2d 1083. See, also, Restatement, Agency 2d, § 1, Comment (e), wherein it is stated:

> " 'Agent' is a word used to describe a person authorized by another *to act on his account and under his control.*" (Emphasis added.)

Restatement, Agency 2d, § 1, read in its entirety, clearly indicates that a principal is included in the term "master," and an agent is included in the term "servant." Just as all principals are not masters, neither are all agents servants. As pointed out in Stambaugh v. Hayes, supra, one may be a servant and an agent at one time (as when he is collecting accounts *for* the principal with his physical actions subject to the master's right of control) and be a "non-servant agent" at another time, when his physical actions are not subject to direct control by the principal. During the period of time in which a principal has the right to control an agent's physical actions, such agent becomes a servant, and the principal-master, for that period, becomes subject to the doctrine of *respondeat superior*. Gallagher's Estate v. Battle, 1956, 209 Md. 592, 122 A.2d 93. In the last cited case, the court quoted the following from Henkelmann v. Metropolitan Life Insurance Co., 1942, 180 Md. 591, 26 A.2d 418:

> "Of course, even an agent may be subject to the control of his principal in respect to some portion of the work

to be performed, and under such circumstances the doctrine of *respondeat superior* can be invoked. *But it has been distinctly held that the doctrine applies in such a case only when the relationship of master and servant existed in respect to the very thing from which the injury arose.*" (Emphasis the court's.)

The above reasoning is based upon the view contained in § 250 of Restatement, Agency 2d. It is also supported by the following cases: Hayward v. Yost, 1952, 72 Idaho 415, 242 P.2d 971; Globe Indemnity Co. v. Victill Corp., 1956, 208 Md. 573, 119 A.2d 423; Hippe v. Duluth Brewing & Malting Co., 1953, 240 Minn. 100, 59 N.W. 2d 665; Crane v. Whitcomb, 1955, 160 Neb. 527, 70 N.W.2d 496; Commonwealth v. Minds Coal Mining Corp., 1948, 360 Pa. 7, 60 A.2d 14; Kickham v. Carter (Mo.1960), 335 S.W.2d 83.

Viewing the evidence, as we must, in a light most favorable to the plaintiff-appellant, we find that there was no issue of fact to be submitted to the jury concerning the relationship existing between the two defendants. There was no conflict in the evidence, all of which pointed unerringly to the existence of a principal-agent relationship between the defendants, since Shelton was engaged in accomplishing a specific result. Only this result, and not the means of obtaining it, was subject to the control of

Dicus. The contract terms, times of delivery and types of merchandise for sale were dictated by Dicus and she controlled Shelton's actions taken regarding these and related terms and conditions. For these purposes Shelton was her agent, and we do not reach the question of whether or not he was, when actually negotiating sales, also her servant. It is evident that he was neither servant nor agent at the time and place of the accident. Dicus had no power of control whatsoever over Shelton's mode of transportation, and while he was traveling from Vaughn to Roswell, he was neither the servant nor agent of defendant Dicus. We find, therefore, that the trial court was correct in directing a verdict for defendant Dicus.

■ The appellant's second point upon which he relies for reversal is to the effect that the trial court erred in refusing to give the following requested instruction:

"12. You are instructed that, if you find by your verdict in favor of the plaintiff and against the defendant, you should take into consideration the present value of the sums so paid.

"The present worth of the earning capacity of an individual for his lifetime is not necessarily based upon the rate of interest which might be realized from safe investments in sound securities, but such rate may be considered by the jury.

"In determining the damages, if any, you may consider in connection with all the other evidence the following data taken from the mortality and interest tables contained in the official statute books of this state:

"(a) A male 38 years of age has a life expectancy of 30.91 years.

"(b) The present value of $1.00 per annum due at the end of each year for 31 years, according to four different interest rates is:

| "2% | 2½% | 3% | 3½% |
|---|---|---|---|
| "$22.93 | $21.39 | $20.00 | $18.74" |

We do not believe that the trial court erred in failing to give the above instruction. This instruction assumes a finding by the jury that the injuries inflicted were permanent in nature. This was a question for the jury, as pointed out by the following instruction given by the trial court which was not objected to:

"10. If you find that the plaintiff Albert Romero is entitled to recover in this action, you may award him such damages, within the amount claimed, as in your opinion will fully and fairly compensate him for the pecuniary damage as proved to have been sustained by him and proximately caused by the wrong complained of. In estimating the amount of such damages, you may consider the physical and mental

pain and distress suffered, if any; *the nature, extent and severity of his injuries,* if any; the extend [sic], degree and character of his suffering, mental and physical, if any; its future duration and severity, and medical and hospital expenses incurred or paid; the reasonable cost of future medical or hospital expenses, if any; and the loss of time and value thereof, *and the loss of earning capacity, if any.*

"*You may also consider whether the injuries, if any, were temporary in nature, or are permanent in character.* And from all these elements, you will resolve what sum will fairly compensate plaintiff for the injuries sustained, not to exceed the sum sought in his complaint $185,000.00." (Emphasis added.)

The instruction requested by plaintiff-appellant applies, if at all, only in the event the jury finds for the plaintiff and also that the plaintiff's injuries are permanent in nature. The instruction would not apply should the jury find that the plaintiff's injuries were temporary in nature— which was possible under the evidence. Yet the requested instruction draws no such distinction, and therefore it was properly refused.

Finding no error in the proceedings below, the judgment will be affirmed. IT IS SO ORDERED.

COMPTON, C. J., and NOBLE, J., concur.

CHAVEZ and MOISE, JJ., not participating.